UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KEVIN COVENY,

                              Plaintiff,

                                                                    **MEMORANDUM
            v.                                                      AND ORDER**
                                                                    25-CV-1214-SJB-JMW
CABLEVISION LIGHTPATH, LLC,

                              Defendant.
-----------------------------------------------------------------X
**BULSARA, United States District Judge:**

Plaintiff Kevin Coveny filed this action alleging his former employer Cablevision

Lightpath, LLC ("Lightpath") violated the Employee Retirement Income Security Act

("ERISA") and the New York State Human Rights Law ("NYSHRL"), by improperly

denying him the opportunity to participate in a Voluntary Retirement Incentive

Program ("VRIP") and discriminating against him based on his disability.  (Am. Compl.

dated June 13, 2025, Dkt. No. 18 ¶¶ 1–6).  Lightpath moves to dismiss the ERISA

claims—it contends the VRIP is not an "employee welfare benefit plan" within the

meaning of ERISA.  (Def.'s Mem. in Supp. of Mot. to Dismiss dated July 7, 2025 ("Def.'s

Mot."), Dkt. No. 24-2).  For the reasons explained below, Lightpath's motion is granted,

and the Court declines to exercise supplemental jurisdiction over the NYSHRL claim.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purpose of this motion, the Court is "required to treat" the Plaintiff's

"factual allegations as true, drawing all reasonable inferences in favor of Plaintiff[] to

the extent that the inferences are plausibly supported by allegations of fact."  *In re Hain*

*Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021); *see also Collins v. United*

*States*, 996 F.3d 102, 105 n.1 (2d Cir. 2021).  The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts."  *In re Hain*, 20 F.4th at 133.  In addition to the Amended Complaint, the Court considers documents that are incorporated by reference, documents which are integral to the pleading, and documents of which the Court takes judicial notice, including those filed in another court proceeding.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Coveny began working as a project manager for Lightpath—an internet provider—in 2007.  (Am. Compl. ¶ 16).  In May 2024, two vice presidents and a manager telephoned Coveny and asked him to provide a status update on several of his projects.  (*Id.* ¶¶ 25, 28).  Coveny "explained . . . that he needed some time to review his projects and requested additional time to respond."  (*Id.* ¶ 31).

After the meeting, Coveny claims that one of the vice presidents berated him for not responding quickly enough, which he says caused him to "experience heart palpitations, dizziness, and discomfort in his chest," and so he scheduled an appointment with his cardiologist.  (*Id.* ¶¶ 31–36).  The doctor recommended that he take a medical leave of absence.  (*Id.* ¶ 37).  Coveny then applied for and received medical leave.  (*Id.* ¶ 38).

Months later, while on leave, Coveny learned that Lightpath introduced a VRIP offering certain employees "an opportunity to voluntarily retire from the [c]ompany

2

before or during normal retirement age." (Am. Compl. ¶ 41). The offer was available from "May 1, 2024 through December 31, 2024." (VRIP Description, attached to Am. Compl. as Ex. A, Dkt. No. 19). An employee was eligible for the VRIP only if he (1) was at least 60 years old, (2) had at least 10 years of service with Lightpath, and (3) was in good standing. (Am. Compl. ¶ 42). "Employees on an approved leave of absence" were expressly deemed "eligible to participate." (VRIP Description). If an employee opted to participate in the VRIP, he would "receive a 1-time lump sum separation payment" equal to "three (3) weeks' base salary for each year of completed service with the Company, up to a maximum of 52 weeks." (*Id.* (emphasis omitted)).

Shortly after learning about the VRIP, Coveny emailed a Human Resources representative and said he was interested in participating. (Am. Compl. ¶ 50). The representative told Coveny "that she believed [he] was not eligible" because "he was not in good standing" with the company. (*Id.* ¶ 51). When Coveny again tried to opt in to the VRIP on a different occasion, the same representative told him that he could apply "only after an attending physician approved [his] return to work." (*Id.* ¶ 59).

On November 1, 2024, while Coveny was still on leave, Lightpath terminated his employment. (*Id.* ¶ 61). A representative explained to Coveny that, per company policy, he was being terminated as a result of his transition from short-term to long-term disability leave. (*Id.* ¶ 62).

Coveny filed this lawsuit in March 2025. (Compl. filed Mar. 5, 2025, Dkt. No. 1). He asserts three claims against Lightpath—(1) violation of ERISA § 510, (Am. Compl. ¶¶ 70–107); (2) violation of ERISA § 502, (*id.* ¶¶ 108–45); and (3) disability

3

discrimination in violation of NYSHRL, (*id.* ¶¶ 146–66).  Lightpath seeks dismissal of the ERISA claims because the VRIP is not an "employee welfare benefit plan" within the meaning of the statute.  (Def.'s Mot. at 8).

<u>STANDARD OF REVIEW</u>

The law in the Second Circuit is unclear as to whether the failure to allege an ERISA-covered "employee welfare benefit plan" is a jurisdictional defect or merits pleading failure.  In *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72 (2d Cir. 1996), the Second Circuit treated the issue as jurisdictional, and noted that "ERISA subject matter jurisdiction depends upon the need for an administrative program."  *Id.* at 76.  Several years later, in *Carlson v. Principal Financial Group*, 320 F.3d 301 (2d Cir. 2003), the Second Circuit, reviewing a decision concluding that there was no subject matter jurisdiction because the plaintiff's annuity contract was not an ERISA plan, found that the district court "incorrectly[] believed that its subject matter jurisdiction was contingent on [plaintiff's] ability to state a claim under ERISA."  *Id.* at 305.  It further explained that the "complaint was drawn so as to seek recovery under ERISA, vesting the District Court with subject matter jurisdiction."  *Id.* at 307.  Nonetheless— despite having one case suggesting the existence of a plan determines subject matter jurisdiction, and another reaching the opposite result—the Second Circuit more recently suggested that the question was an open one.  In *Okun v. Montefiore Medical Center*, it found the district court erred in concluding that the severance policy was not a "plan" governed by ERISA, but declined to reach the question "whether the failure to allege an ERISA-governed 'plan' constitutes a failure to allege federal subject matter jurisdiction

or simply a failure to state a claim." 793 F.3d 277, 278 n.1 (2d Cir. 2015) ("We need not and do not reach the question.").[1]

Because the law in the Second Circuit is unsettled as to whether 12(b)(1) or 12(b)(6) is the appropriate vehicle to analyze Lightpath's motion to dismiss, the Court sets forth both standards. But regardless of which standard applies, the ERISA claims are dismissed.

## I.    12(b)(1) Standard

"A motion to dismiss an action under [Rule 12(b)(1)] raises the fundamental question of whether the federal district court has subject matter jurisdiction over the action before it[.]" 5B Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 1350 (4th ed.). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Collins*, 996 F.3d at 105 n.1 (quotation omitted). "[T]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence, and [w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Allco Fin. Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023)

---

[1] Recently, in other contexts, the Second Circuit has treated the failure to satisfy an element of a claim, or the failure to satisfy other statutory requirements, as merits issues properly resolved under 12(b)(6). *See, e.g.*, *Brook v. Ruotolo*, No. 23-1339, 2024 WL 3912831, at *2 (2d Cir. Aug. 23, 2024) ("[T]he failure to show state action [for a § 1983 claim] is not a 'jurisdictional deficiency.' Rather, it is a merits issue 'to be tested under Rule 12(b)(6).'" (quoting *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997)), *cert. denied*, 145 S. Ct. 2705 (2025).

(quotations omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quotation omitted), *aff'd*, 568 U.S. 85 (2013).

## II.    12(b)(6) Standard

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule

12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives.  Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotations omitted).

DISCUSSION

**I.     ERISA Claims**

ERISA defines "employee welfare benefit plan" to "mean any plan, fund, or program" that "is maintained for the purpose of providing for its participants" specified benefits.  29 U.S.C. § 1002(1).  Not all severance programs are "employee welfare benefit plans."  "[B]oth the Supreme Court and [Second Circuit] have emphasized that ERISA applies only where such an undertaking or obligation requires the creation of an ongoing administrative program." *Schonholz*, 87 F.3d at 75.  In *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), for example, the Supreme Court held that a severance program offering "a one-time, lump-sum payment" was not an employee welfare benefit plan because the employer "assume[d] no responsibility to pay benefits on a regular basis." *Id.* at 12.  The Second Circuit has since applied *Fort Halifax* to hold that an employer's promise to provide sixty days of pay "upon separation of its employees did not constitute an employee welfare benefit 'plan,'" even where some simple calculations were required to determine eligibility and payment amounts. *James v. Fleet/Norstar Fin. Grp.*, 992 F.2d 463, 466–67 (2d. Cir 1993).

7

The Second Circuit has identified "three non-exclusive factors" for courts to consider when determining whether a severance program constitutes an employee welfare benefit plan. *Okun*, 793 F.3d at 279. These factors are "(1) whether the employer's undertaking or obligation requires managerial discretion in its administration; (2) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits; and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Id.* (quotation omitted). The Court addresses each in turn.

First, the administration of Lightpath's VRIP required little managerial discretion. As in *Fort Halifax*, the VRIP offered employees "a one-time, lump-sum payment triggered by a single event"—the employee's voluntary retirement. *Fort Halifax*, 482 U.S. at 12; (*see* VRIP Description). Given that the eligibility requirements were "explicitly spelled out" and the payment was "doled out mechanically" according to a "simple arithmetical calculation," administering the VRIP involved "little administrative oversight." *Gabelman v. Sher*, No. 11-CV-2718, 2012 WL 1004872, at *3–*4 (E.D.N.Y. Mar. 23, 2012) (citation omitted).

Coveny's contention that administering the VRIP required significant managerial discretion because Lightpath had to determine whether an employee was "in good standing" is without merit. While it is true that this determination involves *some* discretion, the "minimal quantum of discretion" needed to determine whether an employee is performing his job in a "satisfactory, productive, and professional manner"

does not transform the VRIP into the kind of ongoing, discretionary administrative enterprise that qualifies as an ERISA plan. *Taverna v. Credit Suisse First Bos. (USA), Inc.*, No. 02-CV-5240, 2003 WL 255250, at *3, *5 (S.D.N.Y. Feb. 4, 2003) (concluding that a severance program's requirement that an employee perform his job "in a satisfactory manner" did not necessitate "discretion of the type contemplated by ERISA").[2]

*Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561 (2d Cir. 1998) is inapposite to Coveny's case. There, the Second Circuit held that a severance program requiring an employer to determine whether employees were terminated "for cause" involved "significant managerial discretion" and therefore constituted an employee welfare benefit plan. *Id.* at 567. But that conclusion rested on other discretionary aspects of the severance program not present here. The employer, for instance, was empowered to determine, and cease providing benefits, if the employee "engage[d] in any activity which is inimical to the best interests of the Company," "induce[d] any employees . . . to leave [the] Company," or did not remain "available to render services." *Id.* Administering the VRIP did not require any analogous exercises of discretion.

Coveny also contends that the VRIP required significant managerial discretion because employees had different termination dates and service time calculations and, as a result, "each employee's situation was to be analyzed and implemented individually."

---

[2] The fact that Lightpath exercised this "minimal quantum of discretion" to deny Coveny the ability to participate in the VRIP is not sufficient to transform the VRIP into an ERISA plan, particularly when the VRIP required no other exercise of discretion and was only offered for a limited period of time. (*See* VRIP Description). The discretion involved in making a one-time determination as to whether an employee is "in good standing" creates "no need for an ongoing administrative program for processing claims and paying benefits." *See Fort Halifax*, 482 U.S. at 12.

9

(Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, Dkt. No. 25 at 17–18; *see also* Am. Compl. ¶ 45). Such "simple arithmetical calculations" that result from "[e]mployees ha[ving] different termination dates" or "different eligibilit[ies] for receiving the payment" are very different from the kind of "ongoing administrative employer program" that ERISA contemplates. *James*, 992 F.2d at 467.

Turning to the second factor, no reasonable employee would have perceived the VRIP as an ongoing commitment by Lightpath to provide benefits. Once again, the VRIP offered participating employees "a 1-time lump sum separation payment." (VRIP Description). And an employer who promises to pay a "one-time, lump-sum payment" upon retirement "assumes no responsibility to pay benefits on a regular basis," and the payment components themselves establish "no need for an ongoing administrative program." *Fort Halifax*, 482 U.S. at 12.

The cases Coveny cites do not alter this conclusion. He points to the Second Circuit's decisions in *Schonholz*, *Tischmann*, and *Okun*. But none of those cases are apposite because each involved separate installment payments over a significant period of time. *See Schonholz*, 87 F.3d at 76–77 ("Unlike the employer's obligation in *Fort Halifax* and the promise in *James*, the Severance Plan was not limited either to a single payment or to a short span of time upon a plant or office closing. The Severance Plan's effective period was unlimited and would have reasonably been perceived by an employee as an ongoing commitment."); *Tischmann*, 145 F.3d at 566 (payments "expected to occur over a protracted period of time"); *Okun*, 793 F.3d at 280 ("The Policy represents a multi-decade commitment to provide severance benefits.").

10

Finally, the third factor—whether the severance program required individualized analysis—also suggests that the VRIP is not an ERISA plan.  As already explained, while employees participating in the VRIP had different termination dates and service time calculations, those kinds of "simple arithmetical calculations and clerical determination[s]" are "a far cry from the ongoing, particularized, administrative, discretionary analysis" involved in ERISA plans.  *James*, 992 F.2d at 468 (quotation omitted).

In sum, because the VRIP offered a "one-time, lump-sum payment triggered by a single event," *Fort Halifax*, 482 U.S. at 12, and required nothing more than "simple arithmetical calculations" to administer, *James*, 992 F.2d at 468, the VRIP is not an "employee welfare benefit plan," 29 U.S.C. § 1002(1), and Coveny's ERISA claims are dismissed.

Although it is not clear whether such a dismissal should be on subject matter jurisdiction or merits grounds, *supra* pp. 4–5, the Court must make a choice between the two because it impacts the form of dismissal.  The Court concludes that the Complaint seeks recovery under ERISA, and the failure is one on the merits—a failure to plead the necessary elements for such recovery.  And because that is not a curable defect, the dismissal is with prejudice.  (Had the dismissal been for lack of subject matter jurisdiction, the Court would be obligated to dismiss without prejudice.)

## II.    NYSHRL Claim

Given the dismissal of Coveny's ERISA claims on the merits, the Court declines to exercise supplemental jurisdiction over his NYSHRL claim.  Under 28 U.S.C.

§ 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" where it "has dismissed all claims over which it has original jurisdiction."  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quotation omitted).  Because this litigation has yet to proceed past the motion to dismiss stage, the ordinary presumption applies and the Court declines to exercise supplemental jurisdiction over the NYSHRL claim.  *See Onibokun v. Chandler*, 749 F. App'x 65, 67 (2d Cir. 2019) (holding that district court did not abuse its discretion in declining to exercise supplemental jurisdiction at motion to dismiss stage); *Badwal v. Badwal*, 756 F. App'x 101, 103 (2d Cir. 2019) (same).[3]

<u>CONCLUSION</u>

For the reasons stated above, Lightpath's motion to dismiss is granted, the ERISA claims are dismissed with prejudice, and the Court declines to exercise supplemental

---

[3] "Where a district court dismisses all federal claims under Rule 12(b)(1) of the Federal Rules of Civil Procedure, however, the district court is *precluded* from exercising supplemental jurisdiction over the remaining state-law claims."  *Cangemi v. United States*, 13 F.4th 115, 134 (2d Cir. 2021); *see also Cohen v. Postal Holdings, LLC,* 873 F.3d 394, 399 (2d Cir. 2017) ("[A] district court has no such discretion when it properly dismisses, pursuant to Rule 12(b)(1), all federal claims over which it might have had original subject–matter jurisdiction.").

jurisdiction over Coveny's NYSHRL claim.  The Clerk of Court is directed to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:    March 20, 2026
          Central Islip, New York